Four cases on for argument today. For the benefit of counsel, we have read your briefs and absorbed your arguments. There's no need to give us a recitation of the procedural background or the facts of the case. We are familiar with those. So given the limited time, I recommend that you get right to the arguments you wish to press upon us. For the benefit of anyone who may not be familiar with our lighting system, the yellow light when it comes on means you're beginning to consume your rebuttal time. The red light means that your entire time has expired. Very well. We'll hear argument first in number 046. Oh, there is one other point. Let me add first for the preparation of lawyers in the second and third cases. The docket now, this is Ultratech against Hamarik Scientific. The docket, I believe, has 1526 as coming second in our series of four cases. First among the two Ultratech cases and 1421, which we'll call the merits case, as coming second. We're going to reverse those two cases. I see that there are different lawyers arguing those two cases. If there's anyone from those two cases who's in the cafeteria or in the library or otherwise assuming that the third case is going to be third, if you could endeavor to make sure that they're here so that they understand that those cases will be inverted in the order of argument. Very well. We can now begin the first case, number 046006, Devlin against the OOC. And Mr. Leib. Thank you. Good morning. May it please the Court if I could direct the Court's attention to the matter of the desk audit in this action, because I think that's what both matters, Devlin 1 and Devlin 2, are most relevant to. And I would suggest that the hearing officer and the Board of Directors in both cases misunderstood necessarily the factual pattern, which I don't wish to go into, but misunderstood the idea that this, quote, quote, refusal of Mr. Devlin to participate in the desk audit really has nothing whatsoever to do with the merits of this action or either action, number 1 or number 2. And by that I mean that when, and I would strongly disagree that he ever declined to take a desk audit, but what I would strongly urge the Court to look at is the pretext of the matter of a desk audit in and of itself. Mr. Devlin performed, even before the matter of a desk audit came up, for two years, he performed a high rate of duties and responsibilities of a high rate of position. But isn't that what a desk audit is supposed to determine? Well, I would necessarily say yes, but for one factor. His first and second and third line supervisors knew what he was doing. The GS9 position had been audited, had been classified. The GS8 position had been audited and classified. And they had ordered him to perform the 9 position. So the desk audit in and of itself is superfluous. If they know what the two positions are classified at, if they know what the two positions require, if they know that they are requiring this one complainant to perform those duties and responsibilities, then there is no reason to have the desk audit. Now, he's done this for two years. The matter of the desk audit two years later, after they have the knowledge of what he's required to do, does not go to the factor of the accretion of duties and equal pay for substantially equal work and the accretion of duties to get a promotion. He's done what he's been compelled to do. He's listened to his supervisors. The two positions have been classified. He's done it on a regular and reoccurring basis. Therefore, according to 1.8.6 of the Chapter 335, the architect's policies, and pursuant to 40 U.S. Code 166B7B-7C2C of the Architect of the Capitalist Human Resources Act, he was entitled to equal pay for substantially equal work because he was doing it on a regular and reoccurring basis. And he was entitled to the promotion based on the accretion of values. It's a noncompetitive promotion. Mr. Lee, excuse me. Wasn't the issue of the audit Go ahead. Go ahead, Judge Garrison. Wasn't the issue of the audit really trying to reestablish his position from a GS-8 to a GS-9? That should have been done when they reclassified the other positions. That should have been done in 19- Why should they have done that without a desk audit to determine whether or not the GS-8 position qualified as a GS-9? The GS-8 position qualified as a GS-8 position. However, for two years he performed GS-9 duties and responsibilities. They should have done the reclassification from the Senior Service Officer to a Building Inspector-8 if that's what they wanted to do in 1998 or 1999. But from 1999 to 2001 and thereafter, as an 8, he's performing Building Inspector-9 duties and responsibilities. You don't need- What they should have done, they didn't do. What they didn't do for two years, they didn't do. But during that interim of two years, based on an accretion of duties concept, he performed something higher than. You don't need an audit to determine that which he is doing and that which he's ordered to do. But correct me if I'm wrong. Does the desk audit increase the position from a GS-8 to a GS-9? I have no idea what the- Is that a reclassification request that's being done? I have absolutely no idea what that desk audit would have accomplished based on what our claim is. Our claim is the fact that he should have gotten an accretion of duties to a 9 Building Inspector because that's what he was doing for two years. I have no idea what the- They knew what the GS-8 was. They knew what the GS-9 was. He never declined necessarily to take the desk audit, but they're two years late. They don't tell him when it's first ordered. They don't tell him when it's removed. Well, did he decline it because it was two years late? No, he did not decline it at all. In terms of a factual condition, he asked, what is this about? And he never got another phone call. And he never received another thought about a desk audit from management. So he didn't, quote, unquote, decline to take a desk audit. That's what might have come out, and I can't recall off the top of my head in terms of the testimony. But that's two years and more after the fact of what he's doing. Has he ever- I mean, the dispute- First of all, is he still employed with the agency?  And he's still an 8? He's still an 8, and as a matter of- Has he asked for- I mean, since the litigation began and the issue of whether he's amenable to a desk audit, has he asked for a desk audit? Has he obtained one? He has not asked for a desk audit, but interestingly enough- Is it fair to infer from the fact that he has not asked for it since the question has arisen as to whether he opposes it or not that he really has not been enthusiastic, to say the least, about a desk audit? His enthusiasm has nothing to do with it because- Well, that's for- I guess that's for us to decide. I understand, but if I might interrupt and say, interestingly enough, the architect of the Capitol told him and said, you are no longer going to do any GS-9 positions, and you'll only do your GS-8 position. So, I mean, it's in and of itself an acknowledgement and an admission by the architect that he was doing the GS-9 work. Now, the fact that he has not actively pursued, that is not necessarily his obligation or responsibility. But in answer to your question, I would state that after a man has necessarily been beaten down by two decisions and has lost, you might say that his emphasis is on survival within the agency as opposed to going back and trying to get another bite of the apple. And saying, are they going to retaliate against me in another manner? I think Judge Lenton has a question. You actually covered the question I had, so I'm all set. Can I ask you to focus on what do you think is the strongest evidence that you have of age discrimination? I mean, to be clear about what I'm looking for is- That he was qualified- Well, I understand. But there's a lot of conduct that may be unfair, improper under the rules and regulations, boorish, impolite, and legally wrong that isn't necessarily discrimination unless there's a basis for pointing to the fact that it was age that was the cause of the discriminatory treatment. Now, what evidence do you have that that factor was present? Well, what do you have about worm gum? I would say, according to the Teamsters case, that where a person is qualified to do the job and where there is a vacancy, and in this matter there is a quote-unquote vacancy, a de facto vacancy because he's doing the job, then he overcomes the prima facie case and that there is vacancy. Well, but the Teamsters is a case in which it's the famous inexorable zero case in which, if I recall the facts of that case, there were hundreds of truck drivers and it just so happened that there were no black truck drivers in the particular unit ever. And the court said that in itself is a sufficient prima facie case of discrimination. The question is, because there they had the numbers of black versus white truck drivers, where is the equivalent number of older versus younger employees? And what evidence do you have on that? The only evidence I can give you relates to this case in that at no time did they dispute that he performed the higher graded duties and responsibilities. Well, but that, I'm still looking for something that says, and here's the way people who were older were treated differently from people who were younger, which is the whole point of Teamsters. I can't necessarily say that this is why he was treated differently. All I can say is... But isn't that the crux of discrimination? Of course that's the crux of the examination. However, when the individual gets up there and says, I've done this, this, and this, and management knows this and this, and I'm not getting what I'm getting from the agency's statutory policies and pursuant to the law, and I have done this, and they do not dispute at any level that I've done this amount of work for the higher graded duties and responsibilities, and there is no other reason given except a desk order which does not apply, as far as we see it, that does not apply to this set of circumstances. But, Mr. Lee, do you have any evidence in the record to show the fact that someone who was younger, who was performing the same duties, was raised to a GS-9 position, thereby discriminating against you? The only thing I have is that other service officers on a reclassification in 1998, 1999, pursuant to a reclassification, became building inspectors and fit into that. They're younger? I do not have any. I would presume they're younger because my client is 50 years of age. Well, we can't presume it. It has to be in the record. I do not have any information. Is that evidence that would support your claim? I'm sorry, sir? Isn't that evidence that would support your claim? It might well be, but I'm dealing with this individual, and I don't believe that comparables are necessary under the age discrimination. It's the idea of what his age was, which was 50 or 51 at the time. Okay. You're beginning to use up your rebuttal time. Would you like to save it? Yeah. Very well. Thank you. Now, we have a divided argument here. Who's going to go first? Mr. Eveleth? Actually, I'm Mr. Wachter. William Wachter. Wachter. Okay. We have a different – oh, I see. All right. Sorry. Yeah, I see. Mr. Wachter. Now, Mr. Wachter, you represent whom? Okay. All right. All right, and as I understand correctly, you're taking eight minutes? All right. Very well. I will stop you when you get to eight minutes. Okay. Very well. So there was a sort of ipsy-dinsy effect that, of course, everybody knew that management assigned these employees a job, so they must know that they were performing a higher degree of duties. Well, in that case – if that were the case, there would be no need for the entire classification process, and that is the question. Certainly the supervisors and the employees are interviewed during the desk process and they're – as the job audit brochure, AOC's job audit brochure indicates, some of them But that doesn't mean that we need to dispense with the entire desk audit, just because the supervisors have a sense and know what the employee is doing most, or maybe even all the time. There is this – it's almost an art, the classification process entails a desk audit that not only determines in detail, by interviewing the supervisor and the employee, as to what exactly the job duties are, but whether these job duties are properly reflected in the position description, and whether the position description is properly graded. That's the whole purpose of the classification process. So, the question is, we don't know whether he was performing duties at the GS-9 level. That's the whole point of the classification process. I understand that the agency is prepared to conduct a desk audit. The AOC, at all times, during both the Dublin 1 and Dublin 2 proceedings, has made it clear that it stands ready to conduct a desk audit at any time Mr. Dublin requests one. Did it ever refuse to perform a desk audit? The hearing officer found, and the record supports the finding, that it never refused a desk audit. Now, what had happened was, the initial AOC proceeding resulted in a settlement that called for a desk audit. But, that desk audit, that settlement agreement was withdrawn, under certain conditions that are clear in the record. But, as a result of this settlement agreement, the OOC had issued an SF-52 calling for a desk audit. And, when Mr. Dublin found out about this, he raised the devil with the classification department, demanding to know, in an email, by what right they were conducting the desk audit. Well, yeah, that's a somewhat unusual email, but do you, is it so clear that he was objecting to, as opposed to inquiring as to the source of the desk audit? I found, I mean, I understand there's a finding here that he objected to it, premised, I guess, on that email. But, let me ask the question this way. Was there any other evidence that he was offered and flat out refused or objected to a desk audit, other than the email? I don't believe so, Your Honor. He was given opportunity after opportunity to request one. Well, when you say given opportunity after opportunity to request one, did anybody actually go to him and say, do you want a desk audit? And, he said no. I don't believe the record. So, what was the form of this opportunity after opportunity, other than that it was available to him if he walked into the door and said, I want a desk audit? When the agency repeatedly, on the record in these proceedings, makes it clear that all he has to do is ask for one, I think it's pretty clear. And, in fact, there is a... But, that's in the legal proceedings, not something that happened in the office around the time of the email and so forth. Well, there was a meeting with the EEO officer and the classification people. He admits that he didn't ask for a desk audit. Did the subject come up? Is there evidence that it came up? In other words, I don't want to play games with words here, but the fact that he didn't ask for one doesn't necessarily equate to refuse to or objected to one when proffered. Yes. But, Your Honor, I think the telegram, I would submit that the hearing officer's reaction to that telegram was perfectly appropriate. It sounded like that the classification folks were being called on the carpet. You know, by what... You mean the email? Yes. I'm sorry, the email. It seems to me that that's a reasonable interpretation of that email, that he did not want to have any part of this. In fact, he testified that the times that the settlement agreement was set aside, that he was not interested in a desk audit because he wanted to see what he could get out of returning to mediation. It was a permissible finding on this record, surely. The hearing officer could permissibly find that the record shows that he was not willing to submit to a desk audit. Well, during the hearing, he made a statement to the effect that, no, I was unwilling to have an audit. I did not refuse, but I was unwilling to have an audit. What is the difference between refuse and unwillingness? Your Honor, it sounds like one and the same thing. By all of his actions, he's indicating he's not willing to cooperate with a desk audit. And if he's not willing to cooperate with a desk audit, the classification people can't do their job. And the AOC cannot be faulted for not promoting him unless he is willing to submit to the process that is standard operating procedure. It appears in the entire federal government, but certainly in the AOC, that's the way, when a job classification request is made by an employee for a promotion, a non-competitive promotion, the procedure is to, when it's based on increased duties, is to submit to a desk audit and cooperate with a desk audit. In fact, in 1981, Mr. Dellin was not competitively promoted. And it was because he voluntarily answered the questions of the classification people. He said, I'm entitled to a higher grade, and a desk audit was conducted, and he was Now, I'd just like to add one point here. All of this is more or less beside the point, because this is an age discrimination case, not a Classification Act case. There is no evidence supporting Everett's age discrimination case. His entire case is based on his claim that he was doing GS-9 job duties, and he was 50 years old. There is no other evidence in this record from which an inference of age discrimination can be drawn. Very well. Why don't we hear from Ms. Miller. By the way, that quote, for purposes of the record, is at page 523 of the appendix. Thank you very much. Ms. Miller, well, go ahead. I'll wait until afterwards. I wanted to ask a procedural question, but it's not necessary to interrupt at the beginning. May it please the Court. Teal Luthie Miller from the Department of Justice on behalf of the Architect of the Capitol. I'd like to start by clearing up two factual points. The first is the question of whether in the competitive promotions that Mr. Devlin sought but didn't receive, whether younger people were hired. The only evidence in the record about who was hired is, in fact, that one of the people, there's only evidence about one of the three, was actually older than him, and that can be found at page 453 of the record. The second is, in addition to the statement from page 523 that he was unwilling to perform a desk audit, on page 433 of the record, he explains he didn't want an audit because he thought he'd like to see what he could get out of the mediation in the absence of an audit, which I think is an equally compelling admission of refusal or unwillingness, and I agree with your suggestion that those two things are ultimately the same and they're a fact in this case. Having made those two points, I think the critical issue here is that this is a case, a complaint about discrimination, and the question of the classification of his job isn't before the Office of Compliance unless he can show that there was some sort of discriminatory motivation for misclassifying his position, and so the absence of any evidence of age discrimination defeats the case, and as has been reviewed, there is no evidence of age discrimination. He claims I'm 50, but that simply isn't enough under the prima facie case to carry the burden of age discrimination. You have to show some differential treatment of younger individuals and older individuals, and he has failed to do so. If you have nothing further, is that all you need to tell us? Let me ask you a question then. Each of these cases, I think I'm right about this, but you can correct me if I'm wrong, that the two governmental entities end up both arguing, both submitting a brief, and without inquiring unduly into the interbranch politics, if that's what it is, or negotiations or otherwise. I mean, by and large, the Court finds single arguments to be more convenient. We sometimes find ourselves asking questions of one counsel that really ought to be addressed to another, and the coming and going is a little awkward. I wonder whether you all have considered in these cases simply having a single attorney, or is that just unmanageable? Or is there another good reason that we hear from both of you? It doesn't strike me, and it hasn't struck me in the past, that there are differences of position with respect to the legal questions. We typically get pretty redundant briefing. I think typically it is true that there are differences of opinion, although I believe there is one Federal Circuit case where the arbitration capital and the Office of Compliance were on opposite sides. Yeah. Well, that's clearly a case where we would expect to see the different presentations, but where they are on the same side and where the arguments are essentially duplicative, I'm not sure that anybody's interest is served well by having multiple arguments. I'd be happy to convey that to my supervisors. Well, it's more in the nature of just sort of an idle inquiry, I suppose, because I think to the extent that I'll put it this way, to the extent that it's merely the product of inertia and nobody's really sat down and grappled with the issue, I wonder if it isn't worth grappling with. I don't know if my colleagues share this view, but I'm speaking for myself, that I think it would be something that should be considered perhaps more frequently in these cases than it is, because so far as I can see it's universal. Okay. Good. Thank you. If the Court has no further questions, I'd just like to emphasize that Mr. Devlin benefited from a desk audit in 1981, and the suggestion that there was anything unusual in the agency's offer of a desk audit and suggestion that this was the proper means of addressing the classification of his position is simply incorrect. In the case that someone believes their position is misclassified under the Classification Act but has no claim of discrimination, the proper procedure under 5 U.S.C. 5112 is to go to the Office of Personnel Management and seek review of the classification of your position. Okay. If the Court has no further questions. Thank you. Thank you, Ms. Miller. Mr. Lieb, you have, I think, about four minutes. I'll be, I think, briefer than four minutes. However, what I would say is it's somewhat ironic that the architect sat on his obligations for at least two years, and when the complainant comes forward with a matter of discrimination based on age, then it is switched around to the responsibility of the complainant, who is now being attacked, so to speak, by the respondents, for sitting on his rights and not requesting. And when the complainant asks the architect to stand by what the law is, in terms of what the architect's responsibilities are, the question then becomes, well, it's up to you to show that you could have had this at any time. But it does not go to the factor that he had done the work, and that is undisputed. And as far as comparators and otherwise, I don't believe it's necessary. And that no one came in. They could have brought in a classifier, or he could have been asked, pursuant to that hearing, whether or not he did this, this, this, this, this, this, and this. At the hearing, in terms of what the classifier would necessarily ask, it is discarded. However, the respondent did not choose to do that. The respondent simply chose to sit and say, this is our abstract procedure, this is what we do. Now there's another factor that I would just very briefly touch on, and that is this idea of a guideline brochure. The guideline brochure is not promulgated pursuant to the way a policy should be promulgated. It should be applied at least minimal, at the very least only minimal. And what that did, in effect, was switch the responsibility from the architect to the employee for purposes of getting a desk audit and or reclassification. The law says one thing, the architect is under that law, the complainant is permitted to have that law necessarily implemented the way the law is written. It's not up to the architect to switch the burdens and responsibilities onto the complainant. He either does the work or doesn't do the work. They had plenty of time to say, don't do the work, instead of saying, stop doing the work ten months later, after all of Devlin 1 and Devlin 2. But Mr. Labe, isn't the difficulty with your case a more fundamental one, and that is the absence of evidence of discrimination? I would necessarily say, you wish to characterize it as that, I would necessarily say that based on the fact that he qualified, he did the work, it's up to them to show why they didn't provide the accretion of duties, noncompetitive promotion, and to put up what we believe is a red herring. Let me ask you a question this way. I'm over 40, so I qualify under the ADA. If I were to apply for a job at the Department of Justice, and I could demonstrate that I was qualified for the job, let's say, of trial attorney at the Department of Justice, but they turned me down, would that be a prima facie case of age discrimination? My evidence is, number one, I'm over 40. Number two, I'm qualified for the job. I think to distinguish with your hypothetical, I can't really give you an answer to that right now, and I apologize to the court for that. But the difference is that he did the work. He's not applying for the work, he's done the work. And that's the essence of it. Thank you very much. Thank you. The case is submitted. Now we will hear argument next in the merits of the Ultratech against Tamarack scientific case, which I believe is number 05-1421. Case initially scheduled to be third, now scheduled, and we'll be here at second.